# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

KENT E. MATHES,      )
             )
   Plaintiff,      )
             )
 vs.          )   **Case No. 4:06-CV-01161 SNL**
             )
MID-CENTURY INSURANCE COMPANY, )
             )
   Defendant.     )

## MEMORANDUM

On or about August 27, 2005, Plaintiff filed the instant action[FN1] in the Circuit Court of the City of St. Louis, Missouri alleging vexatious delay of payment. Thereafter, Defendant removed the action to this Court on the jurisdictional basis of diversity.

This matter comes before the Court on Defendant's motion for summary judgment (Doc. #40, filed Mar. 3, 2008). After careful review of the motion and the responsive pleadings thereto, the Court shall grant Defendant's motion. The analysis found herewith.

### *LEGAL STANDARD*

Although summary judgment motions may be viewed as tools of "great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact," *Mt. Pleasant v. Associated Elec. Coop. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988); courts have repeatedly recognized the severity of summary judgment as a remedy, to be granted only in cases where the movant establishes his right to judgment with such clarity so as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977); *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 209 (8th Cir. 1976).

---

**FN1**. The original action was asserted as against Farmers' Insurance Group, Hillsboro Title Company, and Washington Mutual. Mid-Century Insurance Company belongs to the Farmers' Insurance Group and was substituted as a party-defendant, in place of the latter. Mid-Century Insurance Company is the sole remaining defendant in this cause. (*See* Doc.#1-1 at ¶2, filed Aug. 2, 2006, *and* Doc. Txt. Ord., Feb. 22, 2008.)

In passing on a motion for summary judgment, the court should review all facts supported by the record, and any logical inferences arising therefrom, in the light most favorable to the nonmoving party. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). *See also*, *e.g.*, FED. R. CIV. P. 56(e) (2007); *Robert Johnson Grain Co.*, 541 F.2d at 210 (conflicts of evidence must be construed in favor of non-movant). In that way, summary judgment should not be granted "unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990 (8th Cir. 1998); *see also Mayer v. Nextel West Corp.*, 318 F.3d 803, 806 (8th Cir. 2003) (citing *Keathley v. Ameritech Corp.*, 187 F.3d 915, 919 (8th Cir. 1999)).

## BACKGROUND

For purposes of this motion, the Court finds as follows.

On or about July 4, 2004, Plaintiff's residence was damaged by fire. During such time, Plaintiff's residence, and the contents therein, were covered under an insurance policy ("Policy") issued by Defendant Mid-Century Insurance Company ("Mid-Century"). The subject Policy limited Plaintiff's coverage on his real and personal property to $192,000 and $144,000, respectively. At some point between July 4, 2004 and February 15, 2005, Plaintiff filed a claim for recovery with Mid-Century.

Subsequent to the initial claim, and at the request of Mid-Century; on or about February 15, 2005, Plaintiff submitted a proof of loss,[FN2] claiming losses of $144,000 in personal property. While the claim was pending, Plaintiff disclosed during deposition that the amount claimed (i.e. $144,000) was based on an estimate provided by a professional adjuster he employed to determine the loss. During such time, Plaintiff further stated that he did not know the value of his personal property or how the figure was calculated; and that the adjuster, Mr. Caulfield, had provided the foregoing estimate absent an itemized list of the contents of Plaintiff's residence.

---

**FN2**. Plaintiff draws attention to the circumstances surrounding his submission of the proofs of loss. It is uncontroverted that Mid-Century failed to provide Plaintiff with blank, proof of loss forms. Pursuant to Missouri law, following notice from an insured regarding a loss suffered by fire, an insurer must furnish blank forms of statements and proofs of loss. MO. REV. STAT. § 379.185 (2002). However, an insurer's (i.e Mid-Century's) failure to so furnish is inapposite to the instant motion. To wit, an insurer's failure to comply with Section 379.185 results in (i) relieving the insured (i.e. Plaintiff) of his duty to furnish such statements, and (ii) precluding the insurer (i.e. Mid-Century)

On or about March 3, 2005, following Mid-Century's request for documents in support of his $144,000- claim; Plaintiff delivered a list, totaling $93,166.70, enumerating his personal property destroyed or otherwise damaged by the fire. On June 9, 2005, Mid-Century denied Plaintiff's claim, reasoning (in part) that Plaintiff had misrepresented the nature and extent of his personal property loss.

## ANALYSIS

Following the denial of his claim, in August of 2005, Plaintiff brought the instant action against Mid-Century for Vexatious Delay of Payment, pursuant to Missouri Revised Statute § 375.296 & 375.420. In opposition to Plaintiff's claim, Mid-Century defends that it denied coverage because Plaintiff misrepresented certain facts, in breach of the Policy. The Court first turns to Mid-Century's misrepresentation defense.

### I. Plaintiff's Misrepresentation

Mid-Century moves for summary judgment in its favor in that Plaintiff breached the Policy when he "materially misrepresented and concealed facts with regard to the extent of the loss."

"The interpretation of an insurance policy is a question of law." *Kearns v. Interlex Ins. Co.*, 231 S.W.3d 325, 330 (Mo. Ct. App. 2007) (citing *Blanks v. Farmers Ins. Co., Inc.*, 97 S.W.3d 1, 4 (Mo. Ct. App. 2002)). The contractual language shall be afforded its plain and ordinary meaning. *Id.* (citing *Shahan v. Shahan*, 988 S.W.2d 529, 535 (Mo. 1999)).

The Policy sets forth: "This entire policy is void if any insured has knowingly or willfully concealed or misrepresented any material fact or circumstance relating to this insurance before or after the loss." (Policy at 17.) While such misrepresentation clauses are valid and enforceable in Missouri, *Liberty Mut. Fire Ins. Co. v. Scott*, 486 F.3d 418, 422-23 (8th Cir. 2007) (citing *Childers v. State Farm Fire & Cas. Co.*, 799 S.W.2d 138, 141 (Mo. Ct. App.1990)); Mid-Century must sufficiently establish the existence of the condition subsequent (i.e. Plaintiff's misrepresentation) in order to be free from liability under the Policy. *See Kearns*

---

from complaining of such failure. *See* MO. REV. STAT. § 379.190 (2002). Contrary to Plaintiff's assertion, the statute's plain language does not restrict this Court from reviewing the proofs of loss which Plaintiff did *in fact* furnish to Mid-Century.

*v. Interlex Ins. Co.*, 231 S.W.3d 325, 331 (Mo. Ct. App. 2007) (citing *Hayes v. United Fire & Cas. Co.*, 3 S.W.3d 853, 857 (Mo. Ct. App. 1999)).

In support of its misrepresentation defense, Mid-Century cites (I) the discrepancies between Plaintiff's initial and subsequent insurance claims, (II) Plaintiff's inability to provide credible corroboration of the claimed losses, and/or (III) the vast disparity between Plaintiff's claimed amounts and the value of his personal property as represented in bankruptcy proceedings approximately six months preceding the fire. In opposition, Plaintiff states that the discrepancy as between the bankruptcy schedules and the insurance claim exists because the reported amounts represent different types of values. Alternatively, Plaintiff urges, even assuming a material misrepresentation and/or concealment, a jury could nonetheless find that his conduct was *not* willful and intentional.

First, Plaintiff states that the disparity as between his insurance claim and the value of his personal property during bankruptcy proceedings is attributable to the distinct methods used to calculate such amounts. Specifically, Plaintiff states that, during bankruptcy proceedings, his attorney advised him to, and he did in fact, value his personal property at its then-current *resale value*. In contrast, the amounts listed on the proof of loss, prepared by Mr. Caulfield, represents the *replacement cost* of such property. The Court finds Plaintiff's explanation unreasonable, and the evidence in support thereof insufficient.

Specifically, Plaintiff filed for bankruptcy approximately six months before the fire; and in doing so, he declared, under penalty of perjury, that his personal property amounted to $800.00. The Court cannot reconcile the divergence as between the sum of what Plaintiff designates the "replacement value," i.e. the $93,166.70- insurance claim; with the corresponding sum of the "resale value," i.e. the $800.00- bankruptcy value. While the Court declines to take judicial notice of the amounts reported in his bankruptcy filings;[FN3] there is no evidence to suggest that there was a mistake in his bankruptcy filings, that he accumulated additional

---

[FN3]. Contrary to Mid-Century's position, while the Court may take judicial notice of judicial opinions and proceedings, and of public records; the Court may not take judicial notice of the value of Plaintiff's personal property on July 4, 2004, based on his representations to the bankruptcy court on January 21, 2004. *E.g.*, *Challenger Powerboats, Inc. v. Evans*, No. 4:07CV85, 2007 WL 2885346, at *2 (D.Mo. Sep. 27, 2007) ("[I]t would be inappropriate to take judicial notice of a disputed document, for the truth of the matter asserted."); *accord Baker v. Barnhart*, 457 F.3d 882, 890 (8th Cir. 2006). Although Plaintiff filed the subject bankruptcy schedule to the bankruptcy court

personal property after his bankruptcy filing,[FN4] or that there was a mistake in his proofs of loss.

Alternatively, Plaintiff urges that even if the amounts reported were inaccurate, that he should not be held accountable for his good faith reliance on counsel and/or the adjuster. The Court disagrees. Plaintiff signed (and thereby attested to the accuracy of) each submission to the bankruptcy court and to Mid-Century. Absent extraordinary circumstances not present here, his failure to read and/or understand their contents will not relieve him from the very purpose his signature served.[FN5] Lastly, there is no evidence that Plaintiff's counsel exceeded his authority in their dealings, and Plaintiff will be held accountable for the authorized acts of his agent.[FN6, FN7] *See, e.g.*, *Almon v. Black*, 611 S.W.2d 368, 369 (Mo. App. 1981); *Gibson v. Metropolitan Life Ins. Co.,* 147 S.W.2d 193, 196 (Mo. Ct. App. 1941).

---

under oath, the Court declines to regard it as a judicial admission in this *unrelated* proceeding. *See Martin v. U. S.*, 264 F. 950 (8th Cir. 1920).

To protect the integrity of the judicial process, *Total Petroleum, Inc. v. Davis,* 822 F.2d 734, 737 n. 6 (8th Cir.1987), courts apply estoppel to prohibit parties from taking inconsistent positions in the *same* or *related* litigation. *See, e.g.*, *Knudsen v. U.S.*, 254 F.3d 747, 752 (8th Cir. 2001) (citing *Soo Line R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997)); *U.S. ex rel. Gebert v. Transport Admin. Servs*., 260 F.3d 909, 917-18 (8th Cir. 2001). While the Eighth Circuit has declined to fully resolve its limitations, *Prudential Ins. Co. of America v. National Park Medical Center, Inc.*, 413 F.3d 897, 905 (8th Cir. 2005), most Circuits apply judicial estoppel "where the allegedly inconsistent prior assertion was accepted or adopted by the court in the earlier litigation." *Hossaini v. Western Missouri Medical Center*, 140 F.3d 1140, 1143 (8th Cir. 1998) (listing cases). *But see Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1996).

The instant proceeding involves distinct and unrelated claims from those before the bankruptcy court. Accordingly, the Plaintiff shall not be estopped from taking a position contrary to that formerly asserted.

**FN4**. In fact, the majority of personal property listed on the March 2004 proof of loss shows it to have been acquired before 2004.

**FN5**. *See England v. Houser*, 163 S.W. 890, 893-94 (Mo. Ct. App. 1914) ("To permit a party when sued on a written contract to admit that he signed it, but to deny that it expressed the agreement he made, or to allow him to admit that he signed it but did not read it or know its stipulations, would absolutely destroy the value of all contracts and negotiable instruments." (quoting *First National Bank v. Wells*, 73 S.W. 293, 294 (Mo. Ct. App. 1903)).

**FN6**. The Court affirms Mid-Century's slippery-slope wit:
...[Plaintiff] could perpetually insulate himself from fraud and misrepresentation merely by employing or having an agent make the misrepresentations for him. ... [A]ccording to him all that need be done is to shrug his shoulders and exclaim: "I didn't know, someone else prepared that document."

**FN7**. Plaintiff's failure to plead advice of counsel as an affirmative defense is fatal to his claim in this regard. *Neal v. Sparks*, 773 S.W.2d 481, 489 (Mo. Ct. App. 1989).

For the foregoing reasons, the Court finds insufficient evidence for a jury to find that Plaintiff did not knowingly and/or willfully conceal or misrepresent any material fact or circumstance relating to the Policy before or after the loss.[FN9]

## II. *Vexatious Refusal*

Even assuming, *arguendo*, that Plaintiff had adduced sufficient evidence to disprove Mid-Century's misrepresentation defense, Plaintiff's claim for vexatious refusal fails as a matter of law in that (I) he failed to plead breach of the Policy, and (II) Mid-Century's refusal was not without reasonable cause or excuse.

First, relief for vexatious refusal under Missouri Revised Statutes § 375.420 & 375.296 only applies where there is "a[n] action against an[] insurance company to recover the amount of any loss under a policy." MO. REV. STAT. § 375.420. This is necessarily so because the additional damages available thereunder are calculated as a percentage of "the loss," under the policy. *Id*. *See also id*. § 375.296 ("Additional damages for vexatious refusal to pay" are calculated under Section 375.420, and provide a remedy "in addition to the amount due under the provisions of the contract of insurance and interest thereon.").

While the Court acknowledges the moment of its ruling, Plaintiff is the master of his own complaint. Be it strategy or oversight, Plaintiff's failure to plead breach of contract, while seemingly unreasoned, leaves Plaintiff without *any* relief. *See Overcast v. Billings Mutual Ins. Co.*, 11 S.W.3d 62, 69 (Mo. 2000) ("[A]n insurance company's denial of coverage itself is actionable only as a breach of contract and, where appropriate, a claim for vexatious refusal to pay.") (citing *Duncan v. Andrew County Mutual Insurance Company*, 665 S.W.2d 13 (Mo. Ct. App. 1983); *Halford v. American Preferred Insurance*, 698 S.W.2d 40 (Mo. Ct. App. 1985); *Meeker v. Shelter Mutual Insurance Co.*, 766 S.W.2d 733 (Mo. Ct. App. 1989); *and Shafer v. Automobile Club Inter-Insurance Exchange*, 778 S.W.2d 395 (Mo. Ct. App. 1989)).

---

**FN9**. In *Liberty Mutual Fire Ins. Co. v. Scott*, 486 F.3d 418, 423 (8th Cir. 2007), the Court, on strikingly similar facts, affirmed the district court's judgment against the insured, reasoning that the plaintiff failed to reconcile "the vast difference [between the replacement cost and the resale value]." *Id*. While the issues in Liberty were resolved on a motion for judgment as a matter of law, following the plaintiff's case; Plaintiff has failed to set forth any material facts in dispute which would permit a finding in its favor.

Furthermore, even assuming that Plaintiff had properly asserted a claim for breach of contract, which he has not, additional damages for vexatious refusal is available only upon a showing that the insurer refused to pay such loss *without reasonable cause or excuse*.  Such is not the case at bar.

While the *reasonable cause or excuse* inquiry does not require "direct and specific evidence," all the facts and circumstances of the case must permit a reasonable jury to find vexatious delay.  *Dhyne v. State Farm Fire and Cas. Co.*, 188 S.W.3d 454, 458 (Mo. 2006) (quoting *DeWitt v. American Family Mutual Ins. Co.*, 667 S.W.2d 700, 710 (Mo. 1984)).  Here, the Court finds no material fact in dispute which would permit a jury to find that Mid-Century's refusal and/or delay was without reasonable cause.  In contrast, the uncontroverted evidence proves that Mid-Century conducted an investigation of Plaintiff's claim and concluded that, *inter alia*,  Plaintiff had misrepresented certain facts based on the different amounts listed (i) on his initial and subsequent proofs of loss, and (ii) on his bankruptcy filings and his proofs of loss. Therefore, even assuming Mid-Century's failure to pay was wrongful (upon which this Court renders no opinion), a jury could *not* find that it was without reasonable cause.

An Order in accordance with this Memorandum shall be forthcoming.

Dated this 16th day of June, 2008.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**